| | |
|---|---|
| IN RE SUBPOENA: BUNCOMBE COUNTY, NORTH CAROLINA, | ) ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 2:25-MC-43-DCLC-DCP |
| | ) |
| UNITED HEALTHCRE INSURANCE COMPANY, *et al.*, | ) ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

On October 23, 2025, Buncombe County, North Carolina ("Movant") filed the Motion to Transfer and Motion to Compel UnitedHealthcare Insurance Company, United Healthcare Services, Inc., and UMR, Inc. to Respond to Subpoena ("Motion to Compel") [Doc. 1] in the District of Minnesota. On November 5, 2025, United States Magistrate Judge Elizabeth Cowan transferred this case to the Eastern District of Tennessee [Doc. 9].

On December 8, 2025, the parties filed a Status Report, wherein Movant asked to resubmit its brief and that the parties be given additional time to submit their respective opposition and reply [Doc. 23]. The Court granted that request [Doc. 24].

Movant has now submitted its memorandum in support of its motion [Doc. 29]. UnitedHealthcare Insurance Company, United Healthcare Services, Inc., and UMR, Inc. (collectively, "Respondents") filed a response in opposition [Doc. 36], and Movant filed a reply [Doc. 39]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons

explained below, the Court **DENIES** the motion [**Doc. 1**], as modified by the memorandum [**Doc. 29**].

## I. BACKGROUND

Movant and Respondents have filed lawsuits against Team Health Holdings, Inc., and its related entities (collectively, "Team Health"), *see UnitedHealthcare Servs. v. Team Health Holdings*, *Inc.*, No. 3:21-cv-364 (E.D. Tenn. Oct. 27, 2021) ("*United* Lawsuit") and *Buncombe County v. Team Health Holdings, Inc.*, No. 3:22-cv-420 (E.D. Tenn. Nov. 22, 2022) ("*Buncombe* Lawsuit") (collectively, the "Lawsuits"). The Lawsuits assert similar allegations—namely, that Team Health engaged in upcoding claims, a type of fraud, to obtain more money.

Relevant to the instant matter, on July 2, 2025, Movant served a subpoena on Respondents [Doc. 36 p. 5]. It seeks:

> With regard to all **Relevant Plans** . . . provide the following information, fields or data:
>
> a. Name and address for each plan;
> b. Group ID Number (or equivalent data) for each plan; and
> c. Start date reflecting the date that You began providing TPA services to each plan, if it post-dated 1/1/18 and pre-dated 6/1/25; and end date reflecting the date You ceased providing services to plan (if applicable).

[Doc. 37-1 p. 9]. The subpoena defines "Relevant Plans" as follows:

> any employer-sponsored plan, group health plan or other health or medical plans, for which You provide or have provided TPA and/or ASO-only services between 1/1/18 and 6/1/25, and for which Claims were or are paid by a plan sponsor on a self-funded basis, where the plan paid one or more bills from any of the entities listed in **Tab A** under CPT codes 99283, 99284, or 99285, i.e., the bill was for Emergency Medicine Services at CPT code levels 99283, 99284 or 99285.

[*Id.* at 8].

Respondents object to the subpoena on three grounds: (1) "[it] demands highly sensitive customer information that is wholly irrelevant and unnecessary for the [Movant's] prosecution of its underlying class action[,]" (2) "[their] self-funded plan customers are not members of the [Movant's] putative class action; but even if they were, well-established judicial principles forbid the [Movant] from both pursuing discovery of such absent class members or prosecuting its duplicative litigation in the first place[,]" and (3) "[Movant] is misusing this subpoena (and subsequent motion practice) to wrongly challenge this Court's prior orders concerning [Respondents'] first-filed case, an action in which the [Movant] is not a party and has no legal interest" [*Id.* at 1–2 (emphasis omitted)].

## II.     ANALYSIS

Rule 45 governs subpoenas issued to non-parties, including requests for the production of documents. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection."). A court must quash a subpoena if it subjects the non-party to an undue burden. Fed. R. Civ. P. 34(d)(A)(iv).

"The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:21-CV-84, 2024 WL 5657163, at *2 (E.D. Tenn. Nov. 4, 2024) (quoting *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:18-cv-0722, 2020 WL 12968432, at *2 (M.D. Tenn. Apr. 23, 2020)). Rule 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues,

3

and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Courts have explained that "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)); *see also Burrell v. Duhon*, No. 518CV00141, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019) ("The spirit and purpose of the Federal Rules of Civil Procedure demonstrate that the relevance threshold is a relatively low one." (citation omitted)). And courts have defined the term "relevant" as it is used in Rule 26(b)(1) to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in in the case." *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-CV-02052, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

"Despite being construed broadly, the concept of relevance is not unlimited." *Doe v. Dublin City Sch. Dist. Bd. of Educ.*, No. 2:18-CV-00943, 2019 WL 4538681, at *2 (S.D. Ohio Sept. 19, 2019) (citation omitted). "[T]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Id.* (quoting *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018)). And some courts have noted that "when information is 'negligibly relevant [or] minimally important in resolving the issues' this will not satisfy the standard." *Id.* (alteration in original) (quoting *Doe*, 2018 WL 1373868, at *2). Movant bears the burden to show the information it seeks is relevant. *Chattanooga-Hamilton Cnty. Hosp. Auth.*, 2024 WL 5657163, at *2.

Movant argues that the subpoena seeks relevant information for two reasons [Doc. 29 pp. 7–8]. It explains that the Court ordered Team Health to produce its "nationwide transactional data for 'claims paid by non-governmental FSCs where ER CPT codes (9928x) were billed'" [*Id.* at 7 (citation omitted)]. In support of its request to produce that information, "Movant offered a declaration of [its] expert, Rena Conti, Ph.D., who stated that the data was necessary 'to establish whether [TeamHealth's] billing practices followed consistent patterns across regions, payors, or facilities' and 'to analyze whether or not [TeamHealth's] alleged upcoding practices were systemic and pervasive across the class'" [*Id.* at 7–8 (alterations in original)]. After Team Health produced that data, Movant contends that it "has been working with Dr. Conti to narrow the dataset down to claims that were paid by payors that fall within the [Movant's] class definition (i.e., removing from the dataset all fully insured claims—claims paid by payors like United, not by self-funded/ASO plan sponsors)" [*Id.* at 8]. Movant states that "Defendants apparently intend to challenge [Movant's] ability to meet the ascertainability requirement at class certification" [*Id.*]. It therefore argues that the "TPA subpoenas are allowing [it] to ascertain class members from the nationwide claims data with ease" [*Id.*].

In addition, Movant asserts that "as explained to the Court at the September 25, 2025 Status Conference before Judge Corker, Dr. Conti needs the pertinent ASO plan group numbers from TPAs to ensure accuracy in her forthcoming damages model" [*Id.*].

Respondents argue that Movant "has not adequately explained why the discovery it demands is relevant or necessary" [Doc. 36 p. 8]. They claim that their "customer data is wholly unnecessary to prove ascertainability" [*Id.*]. In addition, Respondents state that "[Movant] also admits it does not need this discovery" [*Id.* at 9]. Respondents submit that in a letter dated October 1, 2025, Movant acknowledged:

> The [Movant] is already in possession of a document produced in discovery that identifies by group number and name numerous United self-funded plans whom we count toward our overall class cohort. From this document we have been able to match 1,543,853 claims within [Team Health's] claims data to a corresponding self funded plan sponsor that uses or previously used United as a TPA. Thus, the information requested in the [Movant's] subpoena will only supplement data that we already have.

[*Id.* (emphasis and citation omitted)].

Respondents submit that "[Movant's] only other explanation for why it needs [Respondents'] customer data is to say that its expert, Dr. Conti, 'needs the pertinent ASO plan group numbers from TPAs to ensure accuracy in her forthcoming damages model'" [*Id.* (citation omitted). According to Respondents, "[E]xtensive damages analysis is not the proper subject of pre-certification discovery" [*Id.* (citation omitted)]. But further, they submit that "[Movant] does not explain why Dr. Conti needs information about [Respondent's] ASO plans or how such information will 'ensure accuracy' in her damages assessment" [*Id.* at 10].

Movant replies that "Team Health has averred in the [*Buncombe* Lawsuit] that with few exceptions its records reflect only the group numbers, but not the names, of the putative class member SFPs that fund the payment of the bills remitted to TPAs by Team Health" [Doc. 39 p. 3]. According to Movant, "Team Health's own claims data does not distinguish between a claim paid by a SFP and that paid by an insurer for a fully-insured plan" [*Id.*]. "As this Court is aware," Movant asserts, it "has devised a method to overcome this problem by issuing subpoenas to TPAs seeking the identities of SFPs to match with the group numbers in the claims data produced by [the defendants]" [*Id.*]. It contends, "Production of the requested information by [Respondents]— which acts as TPA for a significant number of the proposed class members that the [Movant] seeks to represent—would enable [its] experts to match SFP names to the claims data and thereby

6

establish unequivocally that the members of the proposed class are ascertainable" [*Id.* (citation omitted)].

Movant acknowledges that Defendants have "produced the names of some of [Respondents'] SFP clients, representing approximately 1.5 million claims" [*Id.*]. But it argues that the spreadsheet produced by Team Health is dated 2020 and does not include the dates that those SFPs were under contract with [Respondents], substantially limiting the usefulness of that data for [Movant's] experts in their efforts to establish an accurate damages model" [*Id.* at 3–4 (footnote omitted)].

There are several issues with Movant's request. First, Movant states that the subpoena seeks relevant information to show ascertainability. In order to establish a class action, Movant must show that the class is ascertainable. *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). This means "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.211 (Matthew Bender 3d ed. 1997)). The Sixth Circuit has defined permissible criteria:

> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition.

*Id.* at 538–39 (quoting *Moore's Federal Practice* § 23.213 (citations omitted)).

But at the class certification stage, Movant must identify its method for identifying class members, not the identity of the class members, which is what it is seeking here [*See* Doc. 29 p. 2 ("The data will assist the [Movant] is ascertaining the identities of these putative class members in their case brought against [Team Health]" (footnote omitted)]. Indeed, Movant "agrees with [Respondents] that "'[a]scertainability only requires showing class membership can be determined,' not that it must have already been determined by the time the class certification motion is filed or class certification is granted" [*Id.* at 20; *see also id.* at 2 ("[Movant] needs only to show that the identities of the class members are ascertainable, not that they have already actually all been literally ascertained.")]. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 527 (6th Cir. 2015) ("[T]here is significant evidence that Plaintiffs could use traditional models and methods to identify class members."); *Kirkbride v. Kroger Co.*, 349 F.R.D. 160, 194 (S.D. Ohio 2025) ("[W]hether a Kroger customer is a member of the proposed classes is objectively ascertainable from either documents (i.e., contracts), datasets, or third-party discovery.").

Movant maintains that "[n]onetheless, the data [it] seeks from [Respondents'] assists with and is relevant to the ascertainability analysis, and therefore, should be produced" [Doc. 29 p. 20]. Some courts, however, "withhold discovery on the identities of prospective class members until after class certification." *Connolly v. Alltran Fin., LP*, 2019 U.S. Dist. LEXIS 150378, at *3 (E.D. Wis. Sept. 4, 2019) (citation omitted). Movant relies on *Connolly* to argue that "the identity of the members is relevant insofar as it goes to their ascertainability" [Doc. 38 p. 3 (quoting Connolly, 2019 U.S. Dist. LEXIS, at *3)]. But this does not comport with the Sixth Circuit's ascertainability requirements. See *Lyngaas v. Curaden Ag*, 992 F.3d 412, 432 (6th Cir. 2021) ("[A] court need not ascertain 'absent class members' actual identities . . . before a class can be certified,' so long as the class members can be identified in the claims-administration process") (ellipses in original)

8

(quoting *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)). And further, the court in *Connolly* noted that it had "not bifurcated discovery on the issue of class certification." *Connolly*, 2019 U.S. LEXIS, at \*3. The Court has done so in the *Buncombe* Lawsuit. *See Buncombe*, No. 3:22-cv-420 [Docs. 63 & 109].[1]

Next, Movant claims that "Dr. Conti needs the pertinent ASO plan group numbers from TPAs to ensure accuracy in her forthcoming damages model" [Doc. 29 p. 8]. Respondents pointed out that Movant "does not explain why Dr. Conti needs information about [Movant's] ASO plans or how such information will 'ensure accuracy' in her damages assessment" [Doc. 36 p. 10 (emphasis omitted)]. And Movant did not respond to this argument in its reply [*See* Doc. 39].[2]

The Court therefore finds that Movant has not met its burden in showing that the documents should be produced at this time.[3]

---

[1]  Movant asserts, "Once the [Movant's] action is certified as a class action, the [Movant] will be required to provide individual notice to the class that can be identified through reasonable effort" [Doc. 39 p. 3 n.1 (citations omitted)]. It states that it "anticipates that the identification of class members would involve the information sought from [Respondents] here" and therefore, "even if the Court declines to enforce the subpoena at this juncture, the question of enforcement of the [Respondents'] subpoena will likely be before the Court in the near future" [*Id.* (citation omitted)]. But the Court has not certified the *Buncombe* Lawsuit as a class action—in fact, the Movant has not even filed its motion for class certification.

[2]  In its opening brief, Movant stated, "As explained to the Court at the September 25, 2025 Status conference before Judge Corker, Dr. Conti needs the pertinent ASO plan group numbers from TPAs to ensure accuracy in her forthcoming damages model" [Doc. 29 p. 8]. The Movant does not provide the Court with a citation to its explanation. Nevertheless, the Court has reviewed the transcript from the September 25 status conference before Judge Corker. *See Buncombe,* No. 3:22-cv-420 [Doc. 126] (E.D. Tenn. Sept. 29, 2025). The Movant states, "We've been working very closely with our expert using the nationwide claims data that your Honor ordered to be produced to decipher which payors in which markets we needed to target to get the largest representation of self-funded plans with those markets" [Doc. 126 p. 8]. But this does not explain why the subpoena here seeks relevant information.

[3]  Given this finding, the Court need not address the remaining arguments.

9

## III.    CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Compel [**Doc. 1**], as modified by the memorandum [**Doc. 29**].

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

Case 2:25-mc-00043-DCLC-DCP     Document 45     Filed 04/24/26     Page 10 of 10
PageID #: 708